## Main *vs.* Feathers.

A covenant to pay the rent reserved in a lease in fee runs with the land; and an
action will lie thereon, in favor of the assignee of the lessor, against an as-
signee of the lessee.

Where the assignee of a lessee is in the possession of the demised premises, and
in the annual receipt of the issues and profits of the land, it is contrary to
equity that he should be relieved from paying, for it, the price stipulated and
reserved.

DEMURRER to complaint. The action was for arrears of
rent, reserved in and by a lease in fee, from Stephen Van
Rensselaer to John Chamberlin; in which lease there was a
covenant that the lessee and his heirs, representatives and as-
signs, would forever pay to the lessor, his heirs or assigns, the
rent, from year to year; and that for non-payment, the lessor,
his heirs, &c. might distrain, re-enter, &c. The plaintiff was
(by mesne assignments) assignee of the lessor; and the defend-
ant was (by mesne assignments) assignee of the lessee, in part,
and occupied a part of the premises leased.

*C. H. Denio*, for the plaintiff.

*A. Bingham*, for the defendant.

Gould, J. For the defendant it was claimed, (among other
things,) that there having been in the lessor, after he executed
the lease, no reversion, there was *no estate* remaining to him;
and so there was no *privity of estate* between the lessor and
the lessee, and could be none between their respective as-
signees, and this action could not lie. That under our present
law, where there is no reversion in the lessor, the rent is a
rent-seck, and the lessor's only remedy for it is an action on the
covenant against the *covenantor, personally ;* or, which is the
same point, that this covenant to pay rent, (it being a rent-
seck,) as there is no privity of estate between the parties to it,
does *not run with the land ;* but is a mere *personal covenant.*
The points, as to *apportionment* (between assignees of dif-
ferent parts of the premises leased,) and as to the right of

Main *v.* Feathers.

W. P. Van Rensselaer's trustees to assign, &c. were not insisted on, and the demurrer was left to stand on the points above, which were claimed to reach to the conclusion that, so far as the *land* and its *owners and occupants* are concerned, the *obligation to pay any rent, to anybody*, was utterly extinct.

Of this case it is proper to remark, in the outset, that there is no equity in the defense. It is well said (17 *Wend.* 150) that a covenant of warranty runs with the land, *because it makes a part of its value*, (the value of the estate to the grantee,) and is it not as true, that a covenant to pay rent, *lessening the value*, has *diminished the price* paid by the grantee, and should it not, by parity of reasoning, run with the land? Further, the defendant is in the possession of the demised premises, and in the annual receipt of the issues and profits of the land, the *receipt of which* is, always, the true *consideration* of every agreement and of every obligation to pay rent, and the *real basis* of every action to enforce such payment. (*Gould's Plead. ch.* 6, *pt.* 1, § 13.) And it is as much against sound morality and sound law, as it is against the plain common sense of the community, to say that he who *receives the benefit* should be *relieved from paying for it the price stipulated and reserved.* Nothing but some unbending legal rule, will force courts to give any such decision. If in this case such a rule be found, then, and then only, will the demurrer be sustained.

The defendant claims that although (as will be hereafter noted) the decisions of our highest courts, even down to the latest reported cases, speak of such covenants to pay rent (in leases in fee) as "running with the land," there has really been, in them all, an entire overlooking of the true principle, which is to be deduced thus: By the law of 1787 (1 *Rev. Laws, p.* 70) the *tenure* of lands in this state was entirely changed; feudal tenures, fealty, services or restraints on alienation, were abolished, and services charged on lands, passing by the freeholder grantor, were to be "to the chief lord," or paramount title; which paramount title was declared to be in the state. Thus it is claimed that *rent-service* is abolished in this

state, and that a *mere rent* in fee *can* only be *a rent-seck.*
And it being conceded that a covenant to pay a *rent-seck,* (tech-
nically such,) is *not* a covenant running with the land, but the
remedy therefor is *merely personal, therefore, all rents in fee,*
in this state, are charges *merely personal,* on the covenanter;
and the covenant to pay them does *not* run with the land. This
view of the case entirely overlooks the description of rent
known as a *rent-charge ;* one as long and as well known as
either of the others. (*Litt.* § 213.) It is true that, on the
argument of this demurrer, the counsel for the defendant
claimed, (which is not noted in his points,) that there is now,
since the statute of 1846, (*Sess. L. of* 1846, *p.* 369,) no such
thing, in this state, as a rent-charge ; as by that act " *distress
for rent is abolished.*" But that act merely *takes away the
remedy* by actual distress. It by ·no means touches, or at-
tempts to touch, the reservation, or the *right.* So far from it,
the third section of that act provides a *substitute* for the pro-
ceeding by distress (in certain cases) in a notice there specified.
A rent-charge remains then, as it always has been, " a yearly
rent issuing out of land held by another *in fee,* (in tail, for life,
or years,) with *a clause of distress ;* this is a rent-charge, *be-
cause* the *lands* are *charged with a distress,* by *the express
grant or provision of the parties.*" (*Litt.* § 217. *Jacob's Law
Dict.* " *Rent,*" 1.) And the broad distinction between such
rent and a rent-seck, is laid down in the immediate connection :
" if the grant be without a clause of distress, *then* it is a rent
*seck, for that no distress is incident unto it.*" (*Litt.* § 218.
*Jacob, ubi sup.*) The same distinction, on principle, holds
where, by express covenant, or by words of *reservation,* there
is a right of *re-entry* for non-payment of a rent, (in fee.) For
it would be as absurd to say that, though for non-payment you
may *re-enter* on, and *take,* the *land,* still the *covenant to pay*
is one which does *not* run with the land—(in other words, its
fulfillment, or the penalty for non-fulfillment, is not *connected*
with, or *attached* upon, the land)—as it would be to say, that
where for non-payment you may *enter on the* land, and *take
therefrom any distrainable property* to satisfy the rent, still

Main v. Feathers.

the covenant which gives you such a *right in the land,* does not run with the land. The bare statement of either of the latter propositions, shows the utter absurdity of saying that the covenant is one merely *personal,* and to be performed by the covenanter, irrespective of the title, or holding, of the land. That the entire reasoning, as well as the decisions of the later cases in our courts, proceed substantially on the principles I have stated, will be found on a reference to them. The case in 4 *Denio,* 405, does, indeed, decide that the lessor's interest in such a rent, is not *such* an interest in land as *could be sold on execution.* But it goes no further. It says his interest is "an incorporeal hereditament;" not, by our statute, one on which a judgment is a lien. But it does not say that his interest is a *non-entity.* None of these cases goes any further than this; while at the same time, most of them *do* say that the covenant to pay rent in fee *runs with the land.* (*See* 3 *Denio,* 141; 23 *Wend.* 506; 11 *Barb.* 592; 20 *id.* 269; 3 *Selden,* 506, 507; 2 *Kern.* 296, 300 *to* 303.) (*a*)

There is a further point in this case, which is, on principle, equally fatal to the demurrer. By the lease from Stephen Van Rensselaer the *land* is granted in fee, "*yielding and paying,*" *a yearly rent forever.* It would seem rather difficult to hold that these words *mean* any thing else than that the *payment of such annual rent* was *attached* to, and *a condition* of the fee; for breach of which condition, a forfeiture and re-entry could be had at common law, *without* the subsequent covenant for a re-entry. And I cannot see why the assignee of the lessee is not fully within the spirit of Littleton's rule, (*Litt.* § 374,) for, though "*he* never sealed any part of the indenture," he is liable, *because* "inasmuch as he entered and agreed to *have the lands by force of the indenture,* he is bound to perform the conditions within the same indenture, *if he will have the land.*"

(*a*) An assignment by the lessor, of the rent of leasehold premises, creates such a privity of estate between the assignee and the lessee that the former may maintain a suit in his own name for the rent which accrues and becomes payable, while such privity of estate exists. (*Childs* v. *Clark,* 3 *Barb. Ch.* 52.)

Tibbetts *v.* Blood.

There are several divisions of points made, as to the valid assignment of the estate in these rents, and of the right to sue for these rents. But it can hardly, at this time and under the code, be held that the plaintiff's right of action, (provided the prior portions of this opinion be sound,) is even questionable.

The demurrer must be overruled.

[RENSSELAER SPECIAL TERM, April 14, 1856. *Gould,* Justice.]